1   TUCKER ELLIS & WEST LLP
2   ANNE SWOBODA CRUZ – SBN 229819
    515 South Flower Street, 42nd Floor
3   Los Angeles, California 90071
    Telephone: (213) 430-3400
4   Facsimile: (213) 430-3409
    anne.cruz@tuckerellis.com
5
6   Attorneys for Defendant
    ROCKWELL AUTOMATION, INC.
7
8                  **UNITED STATES DISTRICT COURT**
9                  **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11 | |
| 12  DENNIS HELLERVIK and THO HELLERVICK, | Case No. **CV12- 00402** JAK (FMOx) |
| 13           Plaintiffs, | |
| 14  v. | **DEFENDANT ROCKWELL** |
| 15  3M COMPANY; CBS | **AUTOMATION, INC.'S NOTICE** |
|     CORPORATION, F/K/A VIACOM, | **OF REMOVAL OF ACTION** |
| 16  INC., SUCCESSOR BY MERGER TO | **UNDER 28 U.S.C. § 1442(A)(1)** |
|     CBS CORPORATION F/K/A/ | **(GOVERNMENT CONTRACTOR** |
| 17  WESTINGHOUSE ELECTRIC | **IMMUNITY-ACTING UNDER** |
|     CORPORATION; CROWN CORK & | **DIRECTION OF FEDERAL** |
| 18  SEAL USA, INC., INDIVIDUALLY | **OFFICERS)** |
|     AND AS SUCCESSOR IN INTEREST | |
| 19  TO MUNDET CORK COMPANY; | |
|     DAP, INC.; EATON CORPORATION | |
| 20  INDIVIDUALLY AND AS | |
|     SUCCESSOR IN INTEREST TO | |
| 21  CUTLER-HAMMER, INC.; | |
|     ERICSSON, INC. (INDIVIDUALLY | |
| 22  AND AS SUCCESSOR IN INTEREST | |
|     TO ANACONDA WIRE AND CABLE | |
| 23  COMPANY AND CONTINENTAL | |
|     WIRE AND CABLE COMPANY); | |
| 24  GENERAL CABLE CORPORATION; | |
|     GENERAL ELECTRIC COMPANY; | |
| 25  GEORGIA-PACIFIC LLC, F/K/A/ | |
|     GEORGIA PACIFIC CORPORATION | |
| 26  SUCCESSOR IN INTEREST TO | |
|     BESTWELL GYPSUM COMPANY; | |
| 27  HONEYWELL INTERNATIONAL | |
|     INC., INDIVIDUALLY AND AS | |
| 28 | |

1

1  SUCCESSOR INTEREST ALLIED
   SIGNAL, INC. AND BENDIX
2  CORPORATION; KAISER GYPSUM
   COMPANY, INC.; KELLY-MOORE
3  PAINT COMPANY, INC.;
   MECHANICAL DRIVES &
4  BELTING, F/K/A L.A. RUBBER
   COMPANY; METALCLAD
5  INSULATION CORPORATION;
   OWENS-ILLINOIS, INC.,
6  INDIVIDUALLY AND AS
   SUCCESSOR IN INTEREST TO
7  OWENS GLASS COMPANY AND
   C/B/A/ O-I; PARKER HANIFFIN
8  CORPORATION, INDIVIDUALLY
   AND AS SUCCESSOR IN INTEREST
9  TO SACOMA SIERRA COMPANY;
   PHELPS-DODGE CORPORATION
10 A/K/A PHELPS-DODGE
   INDUSTRIES, INC. A/K/A PHELPS-
11 DODGE WIRE & CABLE;
   ROCKWELL AUTOMATION, INC.
12 (INDIVIDUALLY AND AS
   SUCCESSOR IN INTEREST TO
13 ALLEN BRADLEY COMPANY);
   SCHNEIDER ELECTRIC
14 INDIVIDUALLY AND AS
   SUCCESSOR IN INTEREST TO
15 SQUARE D COMPANY, INC.; SOCO
   WEST, INC., F/K/A/ BRENNTAGE
16 WEST, INC., F/K/A/ SOCO-LYNCH
   CORPORATION, F/K/A SOCO-
17 WESTERN CHEMICAL
   CORPORATION, F/K//A STINNES-
18 WESTERN CHEMICAL
   CORPORATION; AND DOES 1-300,
19
                    DEFENDANTS.
20

21

22

23 **TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR**

24 **ATTORNEYS OF RECORD:**

25      Defendant Rockwell Automation, Inc. ("Rockwell") hereby gives notice of

26 removal of the above-entitled action from the Superior Court of the State of

27 California for the County of Los Angeles, to the United States District Court for

28
DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28
U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF
FEDERAL OFFICERS)
LaImanage/010802/004471/760561/1

1  the Central District of California pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446.

2

3                              **Preliminary Matters**

4          1.      On December 9, 2011, plaintiffs Dennis Hellervik and Tho Hellervik

5  filed this personal injury action bearing Case No. BC474978 against Rockwell and

6  multiple other defendants in the Superior Court of the State of California for the

7  County of Los Angeles.  Rockwell was served with the Complaint on December

8  16, 2011.

9          2.      Plaintiffs allege in the Complaint that Dennis Hellervik and Tho

10  Hellervik were injured as a result of exposure to asbestos and asbestos-containing

11  products while working for various employers, including the United States

12  Department of Defense (Compl. ¶ 10).  A true and correct copy of the State Court

13  Complaint is attached hereto as Exhibit A.

14         3.      This case is removable based on federal officer jurisdiction under 28

15  U.S.C., § 1442(a)(1).  Plaintiffs' claims against Rockwell are based on Dennis

16  Hellervik's alleged exposure to equipment including but not limited to equipment

17  allegedly supplied to the United States Navy between 1954-1958; products that

18  would have been designed and manufactured in accordance with specifications

19  provided by the U.S. Navy, and designed and built under the direction and control

20  of the U.S. Navy and its officers.

21                            **Timeliness of Removal**

22         4.      Plaintiffs allege in the Complaint that Dennis Hellervik contracted an

23  asbestos-related injury as a result of exposure to asbestos and asbestos-containing

24  products through his employment at various locations and for various employers.

25  Based on the Complaint, the allegations that Mr. Hellervick was an electrician in

26  the U.S. Navy trigger a basis for federal officer removal jurisdiction as to

27  Rockwell.  (Compl. ¶ 10.)

28
DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28
U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF
FEDERAL OFFICERS)
LaImanage/010802/004471/760561/1

1       5.      This Notice of Removal is timely given the allegations in the

2   Complaint.  Rockwell has filed this Notice of Removal within the appropriate 30

3   day time period following service of the Complaint.  28  U.S.C. § 1446(b).

4                                       **Nature of the Case**

5       6.      This case is based on plaintiffs' allegations that Dennis Hellervik

6   contracted an asbestos-related disease as a result of his exposure to asbestos dust

7   and fibers.

8       7.      Plaintiffs assert negligence, strict products liability, premises

9   owner/contractor liability and loss of consortium causes of action against

10   defendants.

11                             **Jurisdiction and Venue**

12       8.      Jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) as set

13   forth below under Grounds for Removal.

14       9.      Venue is proper in the Central District of California because the

15   state court action, which is subject to this removal petition, was filed in the

16   Superior Court of California for the County of Los Angeles.

17       10.      Section 1442(a) authorizes removal without the consent of any other

18   defendant. *See Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d

19   1310, 1314-1315 (9th Cir. 1981) ("federal officer…can remove without other

20   defendants joining the petition, and the entire case is removed to the federal

21   court").

22                           **Grounds for Removal**

23       11.      This is a civil action over which this Court has original jurisdiction

24   under 28 U.S.C. § 1331, and is removable to this Court by Rockwell pursuant to 28

25   U.S.C. § 1442(a)(1) in that plaintiffs' alleged right to relief depends on the

26   resolution of a substantial question of federal law.

27

28

DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28
U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF
FEDERAL OFFICERS)

LaImanage/010802/004471/760561/1

1        12.     Rockwell was at all relevant times a "person" within the meaning of

2  28 U.S.C. § 1442(a)(1). *Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Cal.

3  1992) (finding that a corporate defendant was a "person").

4        13.     Should plaintiffs file a motion to remand this case, Rockwell

5  respectfully requests an opportunity to respond more fully in writing, but offers the

6  following authorities at this time:

7        14.     Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where

8  the moving party can (1) demonstrate that it acted under the direction of a federal

9  officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3)

10  demonstrate a causal nexus between plaintiffs' claims and the acts it performed

11  under color of federal office. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-

12  31, 134-35 (1989); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D.Cal. 1992);

13  *Machnik v. Buffalo Pumps, Inc.*, 506 F.Supp.2d 99, 102 (D.Conn. 2007).  Here,

14  Rockwell has satisfied all three requirements and is entitled to the federal officer

15  removal provision.

16        15.     Plaintiffs claim that plaintiff Dennis Hellervik was exposed to

17  asbestos from products – including but not limited to electrical products –

18  allegedly supplied by Rockwell while he was employed by the U.S. Department of

19  Defense.  Based on plaintiffs' allegations, Rockwell has a colorable federal defense

20  of government contractor immunity in that any products designed, manufactured,

21  or supplied for use on U.S. Navy vessels for which Rockwell is allegedly

22  responsible, would have been designed, manufactured, or supplied under the

23  direction of an officer of the Navy within the meaning of 28 U.S.C., § 1442(a)(1).

24        16.     All electrical equipment, including motor starters, contactors,

25  relays, push button assemblies, disconnect switches, etc., manufactured for use on

26  U.S. Navy vessels strictly complied with very precise Navy Department

27  specifications or Military Specifications (MilSpecs).  Before a manufacturer

28

DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28
U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF
FEDERAL OFFICERS)

Lalmanage/010802/004471/760561/1

1 received authorization to manufacture or supply electrical components for or to the
2 U.S. Navy, all of the drawings, plans, technical manuals and other design
3 documentation first had to be inspected and approved by the U.S. Navy. During
4 the time in question, the Navy inspections and approvals were the responsibility of
5 the U.S. Navy Bureau of Ships, Naval Ship Systems Command and later the Naval
6 Sea Systems Command (hereinafter "Navy"). The Navy frequently required
7 changes in design, materials and documentation before approving the design and
8 authorizing the manufacture of the electrical devices. (Declaration of Thomas F.
9 McCaffery, Exhibit B, ¶¶ 7-15.)

10   17.   United States Naval Machinery Inspectors were stationed on site at
11 manufacturing facilities to inspect and test this equipment during each phase of the
12 manufacturing process. At any point, if any material, feature or component of the
13 equipment failed to comply with the applicable specifications, standards or the
14 approved design, then it would have been rejected. In short, if any electrical
15 component supplied to the Navy was installed aboard a U.S. Navy vessel, then it
16 conformed to the detailed plans that were approved by the Navy and necessarily
17 complied with all of the precise specifications and standards, including the
18 specification of the precise material composition of component parts, and any that
19 may have contained asbestos. (McCaffery Decl., Exhibit B, ¶ 11.)

20   18.   The Navy required the use of many different components and
21 materials that comprised electrical components that qualified for use on Navy
22 vessels. Each sub-component was designed and manufactured in accordance with
23 similarly precise specifications, standards and, design reviews which also
24 specifically required the precise type of material to be used in these components.
25 Where the specifications or standards permitted the manufacturer to choose
26 between two or more types of materials (such as plastic materials or electrical
27 insulation), the manufacturer's choice was subject to specific Navy review and

28

DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28
U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF
FEDERAL OFFICERS)

approval. To the extent that any piece of equipment supplied by a manufacturer to the U.S. Navy for installation on a combat ship contained asbestos, it would have been specifically required or approved by the Navy through the specification and design approval process. (McCaffery Decl., Exhibit C, ¶ 12.)

19. If an electrical component on a piece of naval equipment was actually installed onboard a U.S. Navy vessel, then that component and the material composition of that component also complied with the precise specifications, standards and design requirements that the Navy required for such a component. If such a component contained asbestos, then the Navy required that it contain asbestos. Therefore, every facet of the design and manufacture of any piece of equipment manufactured or supplied to the Navy for use on any Navy vessel by Rockwell would have been controlled by U.S. Navy. (McCaffery Decl., Exhibit C., ¶¶ 13-14.)

20. Rockwell asserts a colorable federal defense to plaintiffs' claims, which are affirmatively barred by government contractor immunity as stated by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510 (1988), and by the Ninth Circuit Court of Appeals in *McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir. 1983). Pursuant to this federal defense, equipment manufacturers, such as Rockwell, cannot be held liable under state law for any injuries caused by the equipment built for or under the control of the U.S. government when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to these specifications; and (3) the equipment supplier warns the military about any hazards involved in the use of the equipment that are known to the equipment supplier but not known to the military. *See Boyle*, 487 U.S. 500 at 512; *McKay*, 704 F.2d. 444 at 451; *Sundstrom*, 816 F.Supp. 587 at 596-97.

21. Here, Rockwell has raised a colorable federal defense to this action

1  under government contractor immunity.  To the extent plaintiffs claim Rockwell is

2  responsible for electrical components that allegedly exposed Dennis Hellervik to

3  asbestos on board U.S. Navy vessels, (1) such components or equipment would

4  have been designed and manufactured pursuant to precise specifications provided

5  and approved by the U.S. Navy, (2) the components and equipment would have

6  conformed to those specifications, and (3) the U.S. Navy, one of the world's

7  leaders in industrial hygiene concerns, would have possessed information equal to

8  or superior to that of Rockwell concerning issues of industrial hygiene and

9  asbestos medicine, including the potential hazards involved with use of asbestos-

10  containing components or materials associated with electrical or other

11  Naval/marine equipment.  (McCaffery Decl., Exhibit C, ¶ 15.)  Thus, Rockwell

12  would not have had knowledge of any hazards associated with the use of the

13  equipment which was not already known to the U.S. government. *Ibid.*

14         22.    A causal nexus exists between plaintiffs' claims and the acts

15  allegedly performed by Rockwell under the direction of federal officers.  Plaintiffs'

16  claims against Rockwell arise out of Dennis Hellervik's alleged work on and

17  around electrical equipment on board Navy vessels for which Rockwell is

18  allegedly responsible.  Any electrical components provided for use in those vessels

19  would have been designed and manufactured pursuant to precise federal

20  regulations and/or military specifications, and built under the detailed and direct

21  control of federal officers.  Similarly, any written materials and warnings, or lack

22  thereof, that accompanied the components would have been made in accordance

23  with Navy specifications.  The conduct attributable to Rockwell is inseparable

24  from the government specifications, regulations, and oversight, and a clear causal

25  nexus exists between plaintiffs' claims and the acts performed under color of

26  federal office.  Rockwell has more than a colorable federal defense to this state

27  action under government contractor immunity. *See Boyle*, 487 U.S. at 512;

28

DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28
U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF
FEDERAL OFFICERS)

Lalmanage/010802/004471/760561/1

1 | *Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587 (N.D. Cal. 1993); *Fung*
2 | *v. Abex Corp.*, 816 F.Supp. 569 (N.D. Cal. 1992); *Pack v. AC and S, Inc.*, 838 F.
3 | Supp. 1099 (D. Md. 1993); *Crocker v. Borden*, 852 F.Supp. 1322 (E.D. La. 1994);
4 | *Arness v. Boeing North American, Inc.*, 997 F.Supp. 1268 (C.D. Cal. 1998).

5 |      23.     The existence of a single removable claim allows removal of the
6 | entire action. 28 U.S.C. § 1441(c). *National Audubon Society v. Dept. of Water*,
7 | 496 F.Supp. 499, 509 (E.D. Cal. 1980).

8 |      24.     Notice of this removal has been filed with the state court and
9 | provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).

10 |      25.     This removal is based upon this Notice of Removal to the United
11 | States District Court, the Certificate of Service of Notice to Adverse Party of
12 | Removal, the Notice to Adverse Party of Removal filed in the state court action,
13 | and any other matters which the court deems applicable.

14 |
15 |      WHEREFORE, defendant Rockwell prays that this action be removed from
16 | the Superior Court of the State of California for the County of Los Angeles to the
17 | United States District Court for the Central District of California.

18 | DATED:  January 17, 2012          TUCKER ELLIS & WEST LLP
19 |
20 |
21 | By: _____
22 |      Anne Swoboda Cruz
23 |      Attorneys for Defendant
     ROCKWELL AUTOMATION,
     INC.

DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28
U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF
FEDERAL OFFICERS)

Lalmanage/010802/004471/760561/1

# EXHIBIT A

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

DEC 09 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

1  Eric Brown (SBN 229622)
   email: brown@dbelegal.com
2  Michael C. Eyerly (SBN 178693)
   email: eyerly@dbelegal.com
3  Stephen T. Blackburn (SBN 232887)
   email: blackburn@dbelegal.com
4  DEBLASE BROWN EYERLY LLP
   10990 Wilshire Boulevard, Suite 1060
5  Los Angeles, CA 90024
   Telephone: (310) 575-9955
6  Facsimile: (310) 575-9910

7
   Attorneys for Plaintiffs
8  Dennis Hellervick and Tho Hellervick

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   FOR THE COUNTY OF LOS ANGELES

12

13  DENNIS HELLERVIK AND THO              )  CASE NO.    B C 4 7 4 9 7 8
    HELLERVICK,                           )
14                                        )
                                          )
15              Plaintiffs,               )
                                          )  ORIGINAL COMPLAINT FOR
16      vs.                               )  PERSONAL INJURIES
                                          )
17  3M COMPANY;                           )  1. Negligence
    CBS CORPORATION, F/K/A VIACOM,        )  2. Products Liability
18  INC., SUCCESSOR BY MERGER TO CBS      )  3. Premises Owner/Contractor Liability
    CORPORATION F/K/A WESTINGHOUSE        )  4. Loss of Consortium
19  ELECTRIC CORPORATION;                 )
    Crown Cork & Seal USA, Inc.,          )
20  INDIVIDUALLY AND AS SUCCESSOR IN      )  [ASBESTOS]
    INTEREST TO MUNDET CORK               )
21  COMPANY;                              )
    DAP, INC. ;                           )  BY FAX
22  Eaton Corporation individually and as )
    successor in interest to Cutler-Hammer,)
23  Inc.;                                 )
    ERICSSON, INC. (individually and as   )
24  successor in interest to Anaconda Wire )
    and Cable Company and Continental Wire )
25  and Cable Company) ;                  )
    GENERAL CABLE CORPORATION ;           )
26  GENERAL ELECTRIC COMPANY ;            )
    Georgia-pacific LLC, F/K/A GEORGIA    )
27  PACIFIC CORPORATION, SUCCESSOR        )
    IN INTEREST TO BESTWELL GYPSUM        )
28  COMPANY ;                             )
    HONEYWELL INTERNATIONAL INC.,         )

                                      -1-

1  INDIVIDUALLY AND AS SUCCESSOR )
2  INTEREST TO ALLIED SIGNAL, INC. )
AND BENDIX CORPORATION  ; )
3  Kaiser Gypsum Company, Inc.  ; )
KELLY-MOORE PAINT COMPANY, INC. ; )
4  MECHANICAL DRIVES & BELTING, f/k/a )
L.A. Rubber Company ; )
5  METALCLAD INSULATION )
CORPORATION ; )
6  Owens-Illinois, Inc., INDIVIDUALLY AND )
AS SUCCESSOR IN INTEREST TO )
7  OWENS ILLINOIS GLASS COMPANY )
AND D/B/A O-I ; )
8  PARKER HANIFFIN CORPORATION, )
individually and as successor in interest to )
9  Sacoma Sierra Company ; )
PHELPS-DODGE CORPORATION a/k/a )
10  PHELPS-DODGE INDUSTRIES, INC. )
a/k/a PHELPS-DODGE WIRE & CABLE ; )
11  ROCKWELL AUTOMATION, INC. )
(Individually and as successor in interest to )
12  Allen Bradley Company) ; )
SCHNEIDER ELECTRIC INDIVIDUALLY )
13  AND AS SUCCESSOR IN INTEREST TO )
SQUARE D COMPANY, INC.  ; )
14  SOCO WEST, INC., f/k/a Brenntag West, )
Inc., f/k/a Soco-Lynch Corporation, f/k/a )
15  Soco-Western Chemical Corporation, f/k/a )
Stinnes-Western Chemical Corporation ; )
16  and DOES 1-300 )

17              Defendants. )
18  _____ )

19

20      COME NOW Plaintiffs DENNIS HELLERVIK AND THO HELLERVIK for causes of

21  action against Defendants, and each of them, complain and allege as follows:

22

23                     **GENERAL ALLEGATIONS**

24      1.    This case is being brought by DENNIS HELLERVIK and THO HELLERVIK as

25  a result of DENNIS HELLERVIK having been diagnosed with an asbestos-related disease

26  caused by exposure to asbestos. Throughout this complaint use of the term "Plaintiff"

27  shall, where appropriate, mean both DENNIS HELLERVIK and THO HELLERVIK unless

28  the context of its use clearly means one or the other.

      2.    Asbestos litigation has long been designated complex in Los Angeles County
                                    -2-

1    for several historical reasons, including the number of parties, the length, duration and
2    complexity of anticipated deposition testimony of fact, lay and expert witnesses, the
3    wide-ranging medical issues that may or may not be involved, the complexity of industrial
4    hygiene and governmental regulations that may or may not be involved, and the
5    anticipated proportionate amount of economic, non-economic and punitive damages
6    sought for plaintiff's anticipated death and the loss of consortium for his dependants.

7    3.      The average life expectancy of a patient diagnosed with a severe
8    asbestos-related disease (lung cancer) is extremely short. Some patients diagnosed with
9    such disease only live weeks or months following their diagnosis. Further, as their
10    diseases progress, their prognosis slowly worsens such that their ability to participate in
11    trial may diminish drastically. Often, Plaintiff in these cases must present videotaped
12    deposition testimony taken at the outset of their cases, as their medical condition has
13    worsened so severely that even traveling a few miles to the courthouse is impossible.
14    Plaintiff in such cases routinely bring motions for trial preference and often stipulate to
15    expedited and/or shortened time periods for responsive pleadings in order to permit the
16    granting of trial dates in less than 120 days.

17    4.      In this matter, Plaintiff DENNIS HELLERVIK was diagnosed with lung cancer
18    on or about December 9, 2011. Because of Plaintiff's work history, and the numerous
19    asbestos products to which he is alleged to have been exposed, Plaintiff have named
20    numerous manufacturers of asbestos products, premises owners, contractors, and
21    suppliers of asbestos products and fibers as Defendants.

22    5.      The true names and/or capacities, whether individual, corporate, associate,
23    governmental, or otherwise, of Defendants DOES 1 through 300, inclusive, are unknown to
24    Plaintiff at this time; who, therefore, sue said Defendants by such fictitious names; and
25    when the true names and capacities of said Defendants have been ascertained, Plaintiff
26    will amend this complaint accordingly. Plaintiff are informed and believe, and thereon
27    allege that each Defendant designated herein as a DOE is responsible, negligently or in
28    some other actionable manner, for the events and happenings hereinafter referred to, and

1 caused injuries and damages proximately thereby to Plaintiff, as hereinafter alleged, either
2 through said Defendant's own conduct or through the conduct of its agents, servants or
3 employees, or due to the ownership, lease or sale of the instrumentality causing the injury,
4 or in some other manner.

5     6.     Plaintiffs are informed and believe , and thereon allege that at all times
6 mentioned herein, Defendants, and each of them, were the agents, servants, employees
7 and/or joint venturers of their co-Defendants and were, as such, acting within the scope,
8 course, and authority of said agency, employment and/or joint venture, in that each and
9 every Defendant, as aforesaid, when acting as a principal, was negligent in the selection
10 and hiring or each and every other Defendant as the agent, servant, employee and/or joint
11 venturer.

12     7.     Plaintiffs are informed and believe were California residents during a
13 substantial period of Plaintiff DENNIS HELLERVIK's asbestos exposures, upon which
14 Plaintiff' claims are based.

15     8.     Plaintiff is informed and believes, and thereon allege, that at all times
16 mentioned herein, Defendants 3M COMPANY; CBS CORPORATION, F/K/A VIACOM,
17 INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE
18 ELECTRIC CORPORATION; Crown Cork & Seal USA, Inc., INDIVIDUALLY AND AS
19 SUCCESSOR IN INTEREST TO MUNDET CORK COMPANY; DAP, INC.; Eaton
20 Corporation individually and as successor in interest to Cutler-Hammer, Inc.;
21 ERICSSON, INC. (Individually and as successor in interest to Anaconda Wire and Cable
22 Company and Continental Wire and Cable Company) ; GENERAL CABLE
23 CORPORATION ; GENERAL ELECTRIC COMPANY ; Georgia-pacific LLC, F/K/A
24 GEORGIA PACIFIC CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL
25 GYPSUM COMPANY ; HONEYWELL INTERNATIONAL INC., INDIVIDUALLY AND AS
26 SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND BENDIX CORPORATION ;
27 Kaiser Gypsum Company, Inc. ;   KELLY-MOORE PAINT COMPANY, INC. ;
28 MECHANICAL DRIVES & BELTING, f/k/a L.A. Rubber Company ;

-4-

1  METALCLAD INSULATION CORPORATION ; Owens-Illinois, Inc., INDIVIDUALLY AND
2  AS SUCCESSOR IN INTEREST TO OWENS ILLINOIS GLASS COMPANY AND D/B/A
3  O-I ; PARKER HANIFFIN CORPORATION, individually and as successor in interest to
4  Sacoma Sierra Company ; PHELPS-DODGE CORPORATION a/k/a PHELPS-DODGE
5  INDUSTRIES, INC. a/k/a PHELPS-DODGE WIRE & CABLE ; ROCKWELL
6  AUTOMATION, INC. (Individually and as successor in interest to Allen Bradley Company);
7  SCHNEIDER ELECTRIC INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO
8  SQUARE D COMPANY, INC. ; SOCO WEST, INC., f/k/a Brenntag West, Inc., f/k/a
9  Soco-Lynch Corporation, f/k/a Soco-Western Chemical Corporation, f/k/a Stinnes-Western
10 Chemical Corporation;and DOES 1-300, inclusive. inclusive are corporations organized
11 and existing under and by virtue of the laws of the State of California, or the laws of some
12 other state of the United States of America, or some foreign jurisdiction, and that said
13 Defendants were authorized to do and are doing business in the State of California, and
14 that said Defendants have regularly conducted business in the State of California.

15    9.    At all times mentioned above, Defendants, and each of them, were engaged
16 in the business of manufacturing, fabricating, designing, assembling, distributing, leasing,
17 buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and
18 advertising a certain substance, the generic name of which is asbestos, and other products
19 containing said substance.

20    10.    Plaintiff DENNIS HELLERVIK was exposed to Defendants' asbestos and
21 asbestos containing products contributing to and causing the development of lung cancer.
22 Plaintiff was exposed to Defendants' asbestos and asbestos containing products including
23 but not limited to his service in the U.S. Navy as an electrician from 1954-1958; while in the
24 air force as an electrician from 1958-1962, during home remodel projects in the 1960s,
25 1970's and 1980's, during automobile and truck repair work beginning in the 194'0s
26 through the 1980's, and as a civilian engineer/electrician from 1980's through the 2000's.
27 Plaintiff DENNIS HELLERVIK suffers from lung cancer and each of Defendants' asbestos
28 and asbestos containing products that entered his body was a substantial factor in bringing

1  about, prolonging, or aggravating Plaintiff's lung cancer. The asbestos and asbestos

2  containing products Plaintiff was exposed to were manufactured or supplied by a named

3  Defendant and DOES 1-300.

4    11.    Federal Courts lack jurisdiction over this action; removal is therefore

5  improper. Specifically, removal based on diversity jurisdiction is unavailing due to the

6  presence of a Defendant that resides in California. In addition, no claim of admiralty or

7  maritime law is raised, Plaintiff sue no foreign state or agency, and Defendants lack a

8  colorable federal defense that would warrant removal pursuant to 28 U.S.C. 1442(a)(1).

9  Venue is proper in LOS ANGELES County, Superior Court of California.

10                          **FIRST CAUSE OF ACTION**

11                                (Negligence)

12                          (As Against all Defendants)

13    12.    Plaintiff hereby incorporate by reference, as though fully set forth herein,

14  each and every allegation contained in each paragraph above.

15    13.    At all times herein mentioned, each of the named Defendants and DOES 1

16  through 300 was the successor, successor in business, successor in product line or a

17  portion thereof, assign, predecessor, predecessor in business, predecessor in product line

18  or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial

19  owner of or member in an entity researching, studying, manufacturing, fabricating,

20  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

21  supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

22  marketing, warranting, re-branding, manufacturing for others, packaging and advertising as

23  certain product, namely asbestos, and other products containing asbestos. Said entities

24  shall hereinafter collectively be called "Alternate Entities." Each of the herein named

25  Defendants is liable for the tortious conduct of each successor, successor in business,

26  successor in product line or a portion thereof, assign, predecessor in product line or a

27  portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned

28  entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

-6-

1  fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for
2  sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
3  marketed, warranted, re-branded, manufactured for others and advertised a certain
4  product, namely asbestos, and other products containing asbestos. The following
5  Defendants, and each of them, are liable for the acts of each and every "Alternate Entity,"
6  in that there has been a virtual destruction of Plaintiff' remedies against each such
7  "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line,
8  or a portion thereof, of each such "Alternate Entity;" Defendants, and each of them, caused
9  the destruction of Plaintiff' remedies against each such "Alternate Entity;" each such
10 Defendant has the ability to assume the risk-spreading role of each such "Alternate Entity;"
11 and that each such Defendant enjoys the goodwill originally attached to each such
12 "Alternate Entity."  The products they manufactured include, but are not limited, to the
13 following:

| DEFENDANT | ALTERNATE ENTITY/PRODUCT LINE |
|---|---|
| 3M COMPANY | masks, sealants, caulks |
| CBS CORPORATION | F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION; |
| Crown Cork & Seal USA, Inc. | INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO MUNDET CORK COMPANY; |
| Eaton Corporation | individually and as successor in interest to Cutler-Hammer, Inc. |
| ERICSSON, INC. | (Individually and as successor in interest to Anaconda Wire and Cable Company and Continental Wire and Cable Company) |
| Georgia-pacific LLC | F/K/A GEORGIA PACIFIC CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY ; |
| HONEYWELL INTERNATIONAL INC. | INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND BENDIX CORPORATION |
| MECHANICAL DRIVES & BELTING | f/k/a L.A. Rubber Company |

-7-

| Owens-Illinois, Inc. | INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO OWENS ILLINOIS GLASS COMPANY AND D/B/A O-I |
| PARKER HANIFFIN CORPORATION | individually and as successor in interest to Sacoma Sierra Company |
| PHELPS-DODGE CORPORATION | a/k/a PHELPS-DODGE INDUSTRIES, INC. a/k/a PHELPS-DODGE WIRE & CABLE ; |
| ROCKWELL AUTOMATION, INC. | (Individually and as successor in interest to Allen Bradley Company) |
| SCHNEIDER ELECTRIC | INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO SQUARE D COMPANY, INC. |
| SOCO WEST, INC. | (f/k/a Brenntag West Inc., f/k/a SoCo-Lynch Corporation, f/k/a SoCo-Western Chemical Corporation; f/k/a Stinnes-Western Chemical Corporation); fiber supplier |

14.    Defendants, their "Alternate Entities," and each of them had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein, Defendants, their "Alternate Entities," and each of them negligently and carelessly researched, tested or failed to test, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, used, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance, in that said substance was capable of causing and did, in fact, proximately cause personal injuries to users and consumers thereof while being used in manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Plaintiff.

15.    Plaintiff DENNIS HELLERVIK is a worker who, for a substantial length of time, used, handled, and was otherwise exposed to Defendants' asbestos and asbestos products, in a manner that was reasonably foreseeable, while he was working as described in Paragraph 6 above.

-8-

1    16.   As a direct and proximate result of the above-referenced conduct of the
2 Defendants, their "Alternate Entities," and each of them, as aforesaid, said exposure to
3 said asbestos caused severe and permanent injury to Plaintiff's lungs and body, including,
4 but not limited to the disease lung cancer.

5    17.   On or about August 15, 2011 Plaintiff DENNIS HELLERVIK was diagnosed
6 with the asbestos-related disease lung cancer. Prior to that date, Plaintiff, did not know,
7 nor did he have reason to know, that he had contracted this disease related to his
8 exposure to asbestos. Prior to said date, Plaintiff was not aware that exposure to asbestos
9 presented any risk of injury and/or disease to him, and had not been advised or informed
10 by anyone that he could contract, nor indeed did contract, any disease, sickness or injury
11 as a result of working in the vicinity of asbestos.

12    18.   Plaintiff is informed and believes, and thereupon allege, that lung cancer is a
13 vicious, painful and often fatal malignancy of the lung, and that said disease results from
14 exposure to asbestos and asbestos products over a period of time.

15    19.   As a direct and proximate result of the aforesaid conduct of the Defendants,
16 their "Alternate Entities," and each of them Plaintiff DENNIS HELLERVIK has suffered, and
17 continues to suffer, severe and permanent injuries to his person, body and health,
18 including, but not limited to, the disease lung cancer, all to his general damage in a sum
19 within the jurisdictional limits of this court.

20    20.   As a direct and proximate result of the aforesaid conduct of the Defendants,
21 their "Alternate Entities," and each of them Plaintiff were compelled to and did employ the
22 services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat
23 Plaintiff DENNIS HELLERVIK, and did incur medical, hospital and professional incidental
24 expenses, and Plaintiff is informed and believes and thereupon allege that by reason of
25 said injuries, Plaintiff DENNIS HELLERVIK will necessarily incur additional like expenses
26 for an indefinite period of time in the future, and when said amounts are ascertained,
27 Plaintiff will allege said amounts.

28    21.   At all times herein mentioned, Defendants, their "Alternate Entities," and each

ORIGINAL COMPLAINT [ASBESTOS PERSONAL INJURY]

1  of them were aware that the original gaskets and packing supplied with their equipment
2  would need to be removed and replaced with new gaskets and packing during ordinary
3  operation and maintenance of their equipment. Heat and pressure generated by operation
4  would affect the original and replacement gaskets and packing - e.g., making them brittle,
5  friable and not reusable, making replacement necessary and dangerous. It was
6  foreseeable that the process of removing old gaskets and packing, and replacing them with
7  the new materials during ordinary maintenance operations would cause the disturbance of
8  asbestos and/or asbestos containing materials, releasing asbestos into the air. It was also
9  foreseeable that Defendant's equipment needed to be insulated with asbestos containing
10  thermal insulation materials and that the negligent design of Defendants' equipment
11  through its ordinary operation caused the degradation of asbestos containing thermal
12  insulation and the foreseeable removal of these insulation materials and application of new
13  insulation materials, which would cause the disturbance of asbestos and/or asbestos
14  containing materials, releasing asbestos into the air.

15      22.    On or before 1930, the Defendants, their "Alternate Entities," and each of
16  them, have known and have possessed the true facts of medical and scientific data and
17  other knowledge which clearly indicated that asbestos and asbestos-containing products
18  were and are hazardous to the health and safety of Plaintiff DENNIS HELLERVIK, and
19  others in Plaintiff's position working in close proximity with such materials. Specifically,
20  Defendants, their "Alternate Entities," and each of them, knew, or had a duty to know, the
21  following information:

22      (a) E.R.A. Merewether & C.W. Price's 1930 *Report on Effects of Asbestos Dust on*
23      *the Lung* (London: H.M. Stationary Office) put manufacturers, designers,
24      distributors, marketers, sellers, suppliers, installers, inspectors, repairmen,
25      packagers, users, and advertisers of asbestos and asbestos containing products on
26      notice that exposure to asbestos dust can cause pulmonary fibrosis in exposed
27      individuals and discussed processes by which asbestos dust is generated and
28      methods for dust suppression. As such, at least as of 1930, Defendants, their
      "Alternate Entities," and each of them, knew or had the duty to know that exposure

-10-  <span style="font-size:6px">data:W:Clients\Hdrvik, Dennis\6. OSE Drafted Docs\3. Pleadings\Complaint_HELLERVIK,LA.wpd</span>

1    to asbestos dust could cause a debilitating potentially lethal disease, that there was
2    a dose-response relationship between the level of asbestos exposure and risk of
3    contracting disease, and that disease prevention requires the suppression or
4    elimination of asbestos containing dust. In 1933, E.R.A. Merewether's
5    *Memorandum on Asbestosis* (Tubercle, Vol. XIV — 1932-33, December) informed
6    Defendants, their "Alternate Entities," and each of them, that exposure to asbestos
7    containing dust for a period of less than 5 years can cause the lung disease
8    asbestosis, which can be deadly.

9    (b) R. Doll's 1955 article, *Mortality from Lung Cancer in Asbestos Workers* (Br. J.
10   Ind. Med., Vol. 12) put manufacturers, designers, distributors, marketers, sellers,
11   suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of
12   asbestos and asbestos containing products on notice that exposure to asbestos
13   dust can cause lung cancer in exposed individuals, resulting in death. As such, at
14   least as of 1955, Defendants, their "Alternate Entities," and each of them, knew or
15   had the duty to know that exposure to asbestos dust could cause lung cancer, a
16   potentially lethal disease.

17   (c) J.C. Wagner, C.A. Sleggs, & P. Marchland's 1960 article *Diffuse Pleural*
18   *Mesothelioma and Asbestos Exposure in the North Western Cape Province* (Br. J.
19   Ind. Med., Vol. 17) put manufacturers, designers, distributors, marketers, sellers,
20   suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of
21   asbestos and asbestos containing products on notice that exposure to asbestos
22   dust can cause mesothelioma in exposed individuals, resulting in death. The article
23   confirmed a causal association between asbestos exposure and mesothelioma, and
24   noted that even low-level, non-occupational exposures to asbestos can cause
25   mesothelioma. As such, at least as of 1960, Defendants, their "Alternate Entities,"
26   and each of them, knew or had the duty to know that exposure to asbestos dust
27   could cause mesothelioma, a lethal form of cancer, in those directly exposed to
28   asbestos containing dust as well as those secondarily exposed in a residential
     setting.

23. With intent to deceive Plaintiff DENNIS HELLERVIK, and others in Plaintiff's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain financial, business, and other advantages, the following acts occurred:

(a) Defendants, their "Alternate Entities," and each of them, did not label any of the aforementioned asbestos and asbestos containing materials and products with information regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them, herein when the knowledge of such hazards was existing and known to Defendants, their "Alternate Entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b) Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c) Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Plaintiff's employer and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth

-12-

1  herein. By said conduct, Defendants, their "Alternate Entities," and each of them,
2  caused to be positively asserted to Plaintiff that which was not true and that which
3  Defendants, their "Alternate Entities," and each of them, had not reasonable ground
4  for believing to be true, to wit, that it was safe for Plaintiff to work in close proximity
5  to such materials;

6  (d) Defendants, their "Alternate Entities," and each of them, suppressed from
7  Plaintiff medical and scientific data and knowledge of the contents of the Lanza
8  report. Although bound to disclose it, Defendants, their "Alternate Entities," and
9  each of them influenced A.J. Lanza to change his report, the altered version of
10  which was published in Public Health Reports, Volume 50 at page 1 in 1935,
11  thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants,
12  there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely
13  disseminated trade journal, to omit mention of danger, thereby lessening the
14  probability of notice of danger to users thereof;

15  (e) Defendants, their "Alternate Entities," and each of them, belonged to,
16  participated in, and financially supported the Asbestos Textile Institute and other
17  industry organizations which, for and on behalf of Defendants, their "Alternate
18  Entities," and each of them, actively promoted the suppression of information of
19  danger to users of the aforementioned products and materials, thereby misleading
20  Plaintiff by the suggestions and deceptions set forth above in this cause of action.
21  The Dust Control Committee, which changed its name to the Air Hygiene
22  Committee, of the Asbestos Textile Institute was specifically enlisted to study the
23  subject of dust control. Discussions in this committee were held many times
24  regarding the dangers inherent in asbestos and the dangers which arise from the
25  lack of control of dust, and such information was suppressed from public
26  dissemination from 1946 to a date unknown to Plaintiff at this time;
27  (f) Commencing in 1930 with the study of mine and mill workers at Asbestos and
28  Thetford mines in Quebec, Canada, and the study of workers at

-13-

1  Raybestos-Manhattan plants in Manheim and Charleston, South Carolina,
2  Defendants, their "Alternate Entities," and each of them, knew and possessed
3  medical and scientific information of the connection between inhalation of asbestos
4  fibers and asbestosis, which information was disseminated through the Asbestos
5  Textile Institute and other industry organizations to all other Defendants, their
6  "Alternate Entities," and each of them, herein. Between 1942 and 1950, the
7  Defendants, their "Alternate Entities," and each of them suggested to the public as a
8  fact that which is not true and disseminated other facts likely to mislead Plaintiff.
9  Such facts did mislead Plaintiff and others by withholding the afore-described
10  medical and scientific data and other knowledge and by not giving Plaintiff the true
11  facts concerning such knowledge of danger, which Defendants, their "Alternate
12  Entities," and each of them, were bound to disclose;

13  (g) Defendants, their "Alternate Entities," and each of them, failed to warn Plaintiff
14  and others of the nature of asbestos and asbestos containing materials which were
15  dangerous when breathed and which could cause pathological effects without
16  noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and
17  each of them, possessed knowledge and were under a duty to disclose that said
18  materials were dangerous and a threat to the health of persons coming into contact
19  therewith;

20  (h) Defendants, their "Alternate Entities," and each of them, failed to provide Plaintiff
21  with information concerning adequate protective masks and other equipment
22  devised to be used when applying and installing the products of the Defendants,
23  and each of them, despite knowing that such protective measures were necessary,
24  and that they were under a duty to disclose that such materials were dangerous and
25  would result in injury to the Plaintiff and others applying and installing such material;
26  (i) Defendants, their "Alternate Entities," and each of them, when under a duty to so
27  disclose, concealed from Plaintiff the true nature of the industrial exposure of
28  Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of

-14-

1    asbestos would, in time, develop irreversible conditions of pneumoconiosis,
2    asbestosis and/or cancer. Defendants, their "Alternate Entities," and each of them,
3    also concealed from Plaintiff and others that harmful materials to which they were
4    exposed would cause pathological effects without noticeable trauma;
5    (j) Defendants, their "Alternate Entities," and each of them, failed to provide
6    information of the true nature of the hazards of asbestos and asbestos containing
7    materials and that exposure to these materials would cause pathological effects
8    without noticeable trauma to the public, including buyers, users, and physicians
9    employed by Plaintiff and Plaintiff's employers so that said physicians could
10   examine, diagnose and treat Plaintiff and others who were exposed to asbestos,
11   despite the fact that Defendants, their "Alternate Entities," and each of them, were
12   under a duty to so inform and said failure was misleading; and
13   (k) Defendants, their "Alternate Entities," and each of them, failed to provide
14   adequate information to physicians and surgeons retained by Plaintiff's employers
15   and their predecessor companies, for purposes of making physical examinations of
16   Plaintiff and other employees as to the true nature of the risk of such materials and
17   exposure thereto when they in fact possessed such information and had a duty to
18   disclose it.

19   24.   On or before 1930, and thereafter, said Defendants, their "Alternate Entities,"
20   and each of them were aware that users of asbestos and asbestos containing products, as
21   well as members of the general public who would be exposed to asbestos and asbestos
22   products, had no knowledge or information indicating that asbestos could cause injury, and
23   said Defendants, their "Alternate Entities," and each of them, knew that the users of
24   asbestos and asbestos products, as well as members of the general public who were
25   exposed to asbestos and asbestos products, would assume, and in fact did assume, that
26   exposure to asbestos and asbestos products was safe, when in fact said exposure was
27   extremely hazardous to human life.

28   25.   With said knowledge, said Defendants, their "Alternate Entities," and each of

-15-

ORIGINAL COMPLAINT [ASBESTOS PERSONAL INJURY]

1 them opted to manufacture, design, distribute, market, sell, supply, instal, inspect, repair,
2 package, use, and advertise asbestos and asbestos containing products without
3 attempting to protect or warn users or bystanders about the high risk of injury or death
4 resulting from exposure to asbestos and asbestos products. Rather than attempting to
5 protect users and workers from, or warn workers and users of, the high risk of injury or
6 death resulting from exposure to asbestos and asbestos products, Defendants, their
7 "Alternate Entities," and each of them intentionally failed to reveal their knowledge of said
8 risk, fraudulently, consciously and actively concealed and suppressed said knowledge from
9 members of the general public that asbestos and asbestos products were unsafe for all
10 reasonably foreseeable use, with the knowledge of the falsity of said implied
11 representations.

12      26.    Despite the above referenced historical knowledge of said Defendants, their
13 "Alternate Entities," and each of them, concerning the extreme hazards of asbestos,
14 Defendants negligently, carelessly, and with a willful and conscious disregard of the rights
15 and safety of others failed to adequately test, research, label, design, distribute, sell,
16 inspect, repair, use, modify or advertise their asbestos and asbestos containing products in
17 an effort to reduce or eliminate the potential that their products would cause deadly
18 diseases in users, bystanders, and other exposed individuals.

19      27.    The above referenced conduct of said Defendants, their "Alternate Entities,"
20 and each of them was motivated by the financial interest of said Defendants in the
21 continuing, uninterrupted distribution and marketing of asbestos and asbestos containing
22 products.  In pursuance of said financial motivation, said Defendants consciously
23 disregarded the safety of the users of, and persons exposed to, asbestos and asbestos
24 containing products, and were in fact consciously willing to permit asbestos and asbestos
25 containing products to cause injury to workers and users thereof, and persons exposed
26 thereto, including Plaintiff DENNIS HELLERVIK.

27      28.    The above reference conduct, including but not limited to, each Defendant's
28 conscious suppression of the dangers of their product, each Defendant's failure to warn of

-16-    <small>dms:W:\Clients\Hellervik, Dennis\K DSE Drafted Docs\3. Pleadings\Complaint _HELLERVIK LP.wpd</small>

1  the dangers, and each Defendant's decision to continue to manufacture, sell, and distribute
2  its asbestos-containing products, despite the health risks posed by those products and
3  known by each Defendant, were decisions and conduct committed by one or more officers,
4  directors, or managing agents of each Defendant, acting on behalf of said Defendant, or
5  were authorized, known, adopted or approved by an officer, director, or managing agent of
6  each Defendant.

7      29.    The above referenced conduct, including but not limited to, each Defendant's
8  conscious suppression of the dangers of their product, each Defendant's failure to warn of
9  the dangers, and each Defendant's decision to continue to manufacture, sell, and distribute
10  its asbestos-containing products, despite the health risks posed by those products and
11  known by each Defendant, were decisions and conduct committed by an employee of
12  Defendant who exercised substantial independent authority and judgment in his or her
13  corporate decision-making such that his or her decisions ultimately determine corporate
14  policy.

15      30.    Within the corporate hierarchy of each Defendant, authorized persons acted
16  despicably in willful and conscious disregard of the rights and safety of others, including
17  Plaintiff. These persons engaged in the above reference conduct, including by not limited
18  to each Defendant's conscious suppression of the dangers of its asbestos-containing
19  products, each Defendant's failure to warn of the dangers, and each Defendant's decision
20  to continue to manufacture, sell, and distribute its products despite the health risks posed
21  by so doing.

22      31.    The information concerning the health risks of asbestos, and described
23  above, was in the possession of each corporate Defendant and the structure of each
24  Defendant permitted that information to, in fact, move upward to the point were corporate
25  policy was formulated. It became the corporate policy of each Defendant to consciously
26  suppress the dangers of their asbestos-containing products, and fail to warn of the dangers
27  of their asbestos-containing products, and to continue to manufacture, sell, and distribute
28  its asbestos-containing products well after the dangers of asbestos were known to each

1  Defendant for the purpose of maximizing their own profits. It was the corporate policy of
2  each Defendant to choose profit over consumer and worker safety. Defendants, and each
3  of them, through its officers, directors and managing agents engaged in conduct and
4  promulgated corporate policy, that could, and did, kill people.

5      32.    An officer, director, or managing agent of Defendants, their "Alternate
6  Entities," and each of them, with advance knowledge of the extreme health hazard posed
7  by asbestos and asbestos containing products, did, with conscious disregard for the rights
8  and safety of others, commit an act of oppression, fraud, or malice, or did authorize or
9  ratify such acts, including but not limited to Defendants' failure to adequately research, test,
10 or label their asbestos or asbestos-containing products and Defendants' attendant
11 willingness to continue to manufacture, design, distribute, market, sell, supply, install,
12 inspect, repair, package, use, and advertise asbestos and asbestos containing products
13 then known by Defendants to be hazardous to human health. As such, an officer, director,
14 or managing agent of Defendants, their "Alternate Entities," and each of them, authorized
15 or ratified Defendants' failure to take reasonable and necessary efforts to reduce or
16 eliminate the potential that the asbestos and asbestos containing products Defendants
17 manufactured, designed, distributed, used, marketed, sold, supplied, installed, inspected,
18 repaired, packaged, used and advertised would cause deadly diseases, such as lung
19 cancer, in users, bystanders, and other exposed individuals.

20     33.    The above-referenced conduct of said Defendants, their "Alternate Entities,"
21 and each of them was and is willful, malicious, outrageous and/or in conscious disregard
22 and indifference to the rights and safety of users of said asbestos and asbestos containing
23 products, including Plaintiff DENNIS HELLERVIK. Defendants, their "Alternate Entities,"
24 and each of them are guilty of oppression, fraud, or malice and engaged in conduct which
25 was intended by the Defendants to cause injury to the Plaintiff or conduct which was
26 carried on by the Defendants with a willful and conscious disregard of the rights and safety
27 of others. Defendants, their "Alternate Entities," and each of them subjected Plaintiff to
28 cruel and unjust hardship in conscious disregard of their rights and engaged in intentional

-18-                         <span style="font-size:smaller">dms:W:\Clients\Hellervik, Dennis\6. DBE Drafted Docs\3. Pleadings\Complaint _HELLERVIK LA.wpd</span>

1  misrepresentation, deceit, or concealment of a material fact known to the Defendants with
2  the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal
3  rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of
4  punishing Defendants, seek punitive damages, according to proof.

5  ## SECOND CAUSE OF ACTION

6  (Strict Liability)

7  (As Against all Defendants)

8  34.    Plaintiff hereby incorporates by reference, as though fully set forth herein,
9  each and every allegation contained in each of the paragraphs above.

10  35.    At all times mentioned herein, Defendants, their "Alternate Entities," and each
11  of them researched, manufactured, tested or failed to test, designed, labeled, distributed,
12  advertised, marketed, warranted, inspected, repaired, offered for sale, and sold a certain
13  substance, the generic name of which is asbestos, and other products containing said
14  substance which Defendants knew were to be used without inspection for defects and
15  which substance contained design and manufacturing defects, in that same was capable of
16  causing and did, in fact, cause personal injuries to users, consumers, and bystanders while
17  being used in a reasonably foreseeable manner, thereby rendering such asbestos and
18  asbestos containing products unsafe and dangerous for use by users, consumers, and
19  bystanders.

20  36.    As a direct and proximate result of the above described conduct by
21  Defendants, their "Alternate Entities," and each of them, Plaintiff DENNIS HELLERVIK
22  suffered severe and permanent injuries to his person, as alleged hereinabove.

23  37.    At all times mentioned herein, the asbestos and products containing said
24  substance discussed above failed to perform as safely as an ordinary consumer would
25  expect when used in an intended or reasonably foreseeable manner, and the risk of
26  danger inherent in asbestos and asbestos containing products outweighs the benefits of
27  said substance and products.

28  38.    At all times mentioned herein, the foreseeable use of the asbestos and

-19-  <span style="font-size:smaller">dms W:\Lians\Hellervik, Dennis'6 DBE Drafted Docs\3 Pleadings\Complaint _HELLERVIK LA.wpd</span>

1  products containing said substance discussed above involved a substantial danger not
2  readily recognizable to an ordinary user, consumer, or bystander, but which danger was
3  known or knowable to Defendants, their "Alternate Entities," and each of them, and
4  Defendants failed to adequately warn of the substantial danger.

5      39.    As a direct and proximate result of the above described conduct by
6  Defendants, their "alternate entities," and each of them, Plaintiff DENNIS HELLERVIK
7  suffered severe and permanent injuries to his person, as alleged hereinabove.

8      40.    An officer, director, or managing agent of Defendants, their "Alternate
9  Entities," and each of them, with advance knowledge of the extreme health hazard posed
10  by asbestos and asbestos containing products, did, with conscious disregard for the rights
11  and safety of others, commit an act of oppression, fraud, or malice, or did authorize or
12  ratify such acts, including but not limited to Defendants' failure to adequately research, test,
13  or label their asbestos or asbestos-containing products and Defendants' attendant
14  willingness to continue to manufacture, design, distribute, market, sell, supply, instal,
15  inspect, repair, package, use, and advertise asbestos and asbestos containing products
16  then known by Defendants to be hazardous to human health. As such, an officer, director,
17  or managing agent of Defendants, their "Alternate Entities," and each of them, authorized
18  or ratified Defendants' failure to take reasonable and necessary efforts to address the
19  design and manufacturing defects in the asbestos and asbestos containing products that
20  Defendants manufactured, designed, distributed, used, marketed, sold, supplied, installed,
21  inspected, repaired, packaged, used and advertised.

22      41.    The above reference conduct, including but not limited to, each Defendant's
23  conscious suppression of the dangers of their product, each Defendant's failure to warn of
24  the dangers, and each Defendant's decision to continue to manufacture, sell, and distribute
25  its asbestos-containing products, despite the health risks posed by those products and
26  known by each Defendant, were decisions and conduct committed by one or more officers,
27  directors, or managing agents of each Defendant, acting on behalf of said Defendant, or
28  were authorized, known, adopted or approved by an officer, director, or managing agent of

-20-                    dms W:\Clients\xxNowk, Dennis\6. DBE Drafted Docs\3. Pleadings\Complaint _HELLERVIK.LA.wpd

1 | each Defendant.

2 |     42.    The above referenced conduct, including but not limited to, each Defendant's
3 | conscious suppression of the dangers of their product, each Defendant's failure to warn of
4 | the dangers, and each Defendant's decision to continue to manufacture, sell, and distribute
5 | its asbestos-containing products, despite the health risks posed by those products and
6 | known by each Defendant, were decisions and conduct committed by an employee of
7 | Defendant who exercised substantial independent authority and judgment in his or her
8 | corporate decision-making such that his or her decisions ultimately determine corporate
9 | policy.

10 |     43.    Within the corporate hierarchy of each Defendant, authorized persons acted
11 | despicably in willful and conscious disregard of the rights and safety of others, including
12 | Plaintiff. These persons engaged in the above reference conduct, including by not limited
13 | to each Defendant's conscious suppression of the dangers of its asbestos-containing
14 | products, each Defendant's failure to warn of the dangers, and each Defendant's decision
15 | to continue to manufacture, sell, and distribute its products despite the health risks posed
16 | by so doing.

17 |     44.    The information concerning the health risks of asbestos, and described
18 | above, was in the possession of each corporate Defendant and the structure of each
19 | Defendant permitted that information to, in fact, move upward to the point were corporate
20 | policy was formulated. It became the corporate policy of each Defendant to consciously
21 | suppress the dangers of their asbestos-containing products, and fail to warn of the dangers
22 | of their asbestos-containing products, and to continue to manufacture, sell, and distribute
23 | its asbestos-containing products well after the dangers of asbestos were known to each
24 | Defendant for the purpose of maximizing their own profits. It was the corporate policy of
25 | each Defendant to choose profit over consumer and worker safety. Defendants, and each
26 | of them, through its officers, directors and managing agents engaged in conduct and
27 | promulgated corporate policy, that could, and did, kill people.

28 |     45.    The above-referenced conduct of said Defendants, their "Alternate Entities,"

1   and each of them was and is willful, malicious, outrageous and/or in conscious disregard
2   and indifference to the rights and safety of users of said asbestos and asbestos containing
3   products, including Plaintiff DENNIS HELLERVIK. Defendants, their "Alternate Entities,"
4   and each of them are guilty of oppression, fraud, or malice and engaged in conduct which
5   was intended by the Defendants to cause injury to the Plaintiff or conduct which was
6   carried on by the Defendants with a willful and conscious disregard of the rights and safety
7   of others. Defendants, their "Alternate Entities," and each of them subjected Plaintiff to
8   cruel and unjust hardship in conscious disregard of their rights and engaged in intentional
9   misrepresentation, deceit, or concealment of a material fact known to the Defendants with
10   the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal
11   rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of
12   punishing Defendants, seek punitive damages, according to proof.

13                         **THIRD CAUSE OF ACTION**

14                      (Premises Owner/Contractor Liability)

15                         (As Against Defendants)

16       46.    Plaintiff hereby incorporates by reference, as though fully set forth herein,
17   each and every allegation contained in each of the above.

18       47.    At all times mentioned herein, the Premises Owner/Contractor Liability
19   Defendants, their "Alternate Entities," and each of them, owned, leased, maintained,
20   managed, and/or controlled the premises at which Plaintiff DENNIS HELLERVIK was
21   exposed to asbestos and asbestos containing products.

22       48.    Prior to and at said times and places, said Premises Owner/Contractor
23   Liability Defendants, their "Alternate Entities," and each of them, caused asbestos and
24   asbestos containing products to be constructed, installed, maintained, used, supplied,
25   replaced, repaired and/or removed on their respective premises, by their own workers
26   and/or by employing various contractors, and caused the release of dangerous quantities
27   of toxic asbestos fibers into the ambient air and thereby created a hazardous and unsafe
28   condition to Plaintiff DENNIS HELLERVIK and other persons exposed to said asbestos

1 | fibers while present at said premises.

2 |     49.    At all times mentioned herein, said Premises Owner/Contractor Liability
3 | Defendants, their "Alternate Entities," and each of them, knew or in the exercise of ordinary
4 | and reasonable care should have known, that the foregoing conditions and activities
5 | created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and
6 | personal injury to Plaintiff DENNIS HELLERVIK and other workers or persons so exposed
7 | present on each of the aforesaid respective premises.

8 |     50.    At all times relevant herein, Plaintiff DENNIS HELLERVIK entered said
9 | premises and used or occupied each of said respective premises as intended and for each
10 | of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In
11 | so doing, Plaintiff was exposed to dangerous quantities of asbestos fibers released into the
12 | ambient air by the aforesaid hazardous conditions and activities managed, maintained,
13 | initiated, and/or otherwise created, controlled, or caused by said Premises
14 | Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them.

15 |     51.    Plaintiff DENNIS HELLERVIK at all times was unaware of the hazardous
16 | condition or the risk of personal injury created by the aforesaid presence and use of
17 | asbestos products and materials on said premises.

18 |     52.    At all times mentioned herein, said Premises Owner/Contractor Liability
19 | Defendants, their "Alternate Entities," and each of them, remained in control of the
20 | premises where Plaintiff DENNIS HELLERVIK was performing his work.

21 |     53.    At all times mentioned herein, the Premises Owner/Contractor Liability
22 | Defendants, their "Alternate Entities," and each of them, owed to Plaintiff and others
23 | similarly situated a duty to exercise ordinary care in the management of such premises in
24 | order to avoid exposing workers such as Plaintiff DENNIS HELLERVIK to an unreasonable
25 | risk of harm and to avoid causing injury to said person.

26 |     54.    At all times mentioned herein, said Premises Owner/Contractor Liability
27 | Defendants, their "Alternate Entities," and each of them, negligently failed to maintain,
28 | manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff

-23-     <small>dms W:\Clients\Hellervik, Dennis\6, D3E Drafted Docs\3 Pleadings\Complaint_HELLERVIK.LA.wpd</small>

1   of the existence of the aforesaid dangerous conditions and hazards on said premises.

2       55.    At all times mentioned herein, said Premises Owner/Contractor Liability

3   Defendants, their "Alternate Entities," and each of them, should have recognized that the

4   work of said contractors, identified above in Paragraph 40, would create during the

5   progress of the work, dangerous, hazardous, and unsafe conditions which could or would

6   harm Plaintiff DENNIS HELLERVIK and others unless special precautions were taken.

7       56.    In part, Plaintiff DENNIS HELLERVIK was exposed to dangerous quantities

8   of asbestos fibers by reason of such contractors' failure to take necessary precautions.

9       57.    The work of contractors on premises controlled by the Premises

10  Owner/Contractor Defendants created an unsafe premise and an unsafe work place by

11  reason of the release of dangerous quantities of asbestos fibers.

12      58.    The unsafe premise or work place was created, in part, by the negligent

13  conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said

14  negligent conduct includes but is not limited to:

15          (a) Failure to warn about the hazards of asbestos dusts;

16          (b) Failure to suppress, reduce, or eliminate the release of asbestos containing dust

17          into the premises;

18          (c) Failure to remove asbestos containing dust on the premises through the use of

19          ventilation or appropriate means;

20          (d) Failure to provide adequate breathing protection, i.e., approved respirators or

21          masks to those exposed to the release of asbestos dust;

22          (e) Failure to inspect and/or test the air for the presence of asbestos fibers;

23          (f) Failure to provide medical monitoring to those exposed to asbestos dust.

24      59.    The Premises Owner/Contractor Defendants' duty to maintain and provide

25  safe premises, a safe place to work, and to warn of dangerous conditions are

26  non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code

27  §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated

28  thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any

-24-

1 | breach of said duties whether by themselves or others.

2 |      60.    Prior to and at said times and places, said Premises Owner/Contractor
3 | Liability Defendants, their "Alternate Entities," and each of them were subject to certain
4 | ordinances, statutes, and other government regulations promulgated by the United States
5 | Government, the State of California, and others, including but not limited to the General
6 | Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the
7 | California Administrative Code under the Division of Industrial Safety, Department of
8 | Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous
9 | Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as
10 | documented for asbestos and other toxic substances under Appendix A, Table 1 of said
11 | Safety Orders; additionally, California Health & Safety Code §40200, et seq., which
12 | empowers the California Air Quality Management Districts to promulgate regulations
13 | covering emission standards for hazardous air pollutants. Such state and federal standards
14 | required said Premises Owner/Contractor Liability Defendants, their "Alternate Entities,"
15 | and each of them, to provide specific safeguards or precautions to prevent or reduce the
16 | inhalation of asbestos dust; and said Premises Owner/Contractor Liability Defendants
17 | failed to provide the required safeguards and precautions. Defendants' violations of said
18 | codes include but are not limited to:

19 |     (a) Failing to comply with statutes and allowing ambient levels of airborne asbestos
20 |     fiber to exceed the permissible/allowable levels with regard to the aforementioned
21 |     statutes;

22 |     (b) Failing to segregate work involving the release of asbestos dusts;

23 |     (c) Failing to suppress asbestos dust using prescribed ventilation techniques;

24 |     (d) Failing to suppress asbestos dust using prescribed "wet down" techniques;

25 |     (e) Failing to warn or educate Plaintiff DENNIS HELLERVIK or others regarding
26 |     asbestos on the premises;

27 |     (f) Failing to provide approved respiratory protection devices;

28 |     (g) Failing to ensure "approved" respiratory protection devices were used properly;

-25-

1    (h) Failing to provide for an on-going health and screening program for those
2    exposed to asbestos on the premises;

3    (i) Failing to provide adequate housekeeping and clean-up of the work place;
4    (j) Failing to properly warn of the hazards associated with asbestos as required by
5    statute;

6    (k) Failing to properly report renovation and disturbance of asbestos containing
7    materials;

8    (l) Failing to have an asbestos removal supervisor as required by regulation;
9    (m) Failing to get approval for renovation as required by statutes; and
10   (n) Failing to maintain records as required by statute.

11   61.    Premises Owner/Contractor Liability Defendants, their "Alternate Entities,"
12   and each of them, were the "statutory employer" of Plaintiff DENNIS HELLERVIK as
13   defined by the California Labor Code and California case law.

14   62.    Plaintiff DENNIS HELLERVIK at all times was unaware of the hazardous
15   condition or the risk of personal injury created by Defendants' violation of said regulations,
16   ordinances, or statutes.

17   63.    At all times mentioned herein, Plaintiff DENNIS HELLERVIK was a member
18   of the class of persons whose safety was intended to be protected by the regulations,
19   statutes, or ordinances described in the foregoing paragraphs.

20   64.    At all times mentioned herein, said Premises Owner/Contractor Liability
21   Defendants, their "Alternate Entities," and each of them, knew, or in the exercise of
22   ordinary and reasonable care should have known, that the premises that were in their
23   control would be used without knowledge of, or inspection for, defects or dangerous
24   conditions, that the persons present and using said premises would not be aware of the
25   aforesaid hazardous conditions to which they were exposed on the premises, and that
26   such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

27   65.    As a legal consequence of the foregoing, Plaintiff DENNIS HELLERVIK
28   developed the asbestos-related disease lung cancer, which has caused great injury and

-26-    <span style="font-size:smaller">Oris W:\Clients\Hellervik, Dennis\6. DBC Drafted Docs\3. Pleadings\Complaint _HELLERVIK LA.wpd</span>

1    disability as previously set forth, and Plaintiff have suffered damages as herein alleged.

2        66.    An officer, director, or managing agent of Premises Owner/Contractor Liability
3    Defendants, their "Alternate Entities," and each of them, with advance knowledge of the
4    extreme health hazard posed by asbestos and asbestos containing products, did, with
5    conscious disregard for the rights and safety of others, commit an act of oppression, fraud,
6    or malice, or did authorize or ratify such acts, including but not limited to Defendants'
7    failure to provide workers with an adequately safe work environment and Defendants'
8    attendant willingness to continue to construct, install, maintain, use, supply, replace, repair
9    and/or remove asbestos and asbestos containing products, thereby generating airborne
10   asbestos dust to which Plaintiff DENNIS HELLERVIK was exposed. As such, an officer,
11   director, or managing agent of Premises Owner/Contractor Liability Defendants, their
12   "Alternate Entities," and each of them, authorized or ratified Defendants' failure to take
13   reasonable and necessary efforts to ensure that workers such as Plaintiff DENNIS
14   HELLERVIK were not exposed to toxic asbestos dust on their premises.

15       67.    The above reference conduct, including but not limited to, each Defendant's
16   conscious suppression of the dangers of their product, each Defendant's failure to warn of
17   the dangers, and each Defendant's decision to continue fail to provide workers with an
18   adequately safe work environment were decisions and conduct committed by one or more
19   officers, directors, or managing agents of each Defendant, acting on behalf of said
20   Defendant, or were authorized, known, adopted or approved by an officer, director, or
21   managing agent of each Defendant.

22       68.    The above referenced conduct, including but not limited to, each Defendant's
23   conscious suppression of the dangers of asbestos, each Defendant's failure to warn of the
24   dangers, and each Defendant's decision to continue to create an unsafe work
25   environment, were decisions and conduct committed by an employee of Defendant who
26   exercised substantial independent authority and judgment in his or her corporate decision-
27   making such that his or her decisions ultimately determine corporate policy.

28       69.    Within the corporate hierarchy of each Defendant, authorized persons acted

-27-    dms:W:\Clients\Hellervik, Dennis 6. DBE Drafted Docs\3 Pleadings\Complaint_HELLERVIK LA.wpd

1 despicably in willful and conscious disregard of the rights and safety of others, including
2 Plaintiff. These persons engaged in the above reference conduct, including by not limited
3 to each Defendant's conscious suppression of the dangers of asbestos, each Defendant's
4 failure to warn of the dangers, and each Defendant's decision to continue to create an
5 unsafe premises by so doing.

6     70.    The information concerning the health risks of asbestos, and described
7 above, was in the possession of each corporate Defendant and the structure of each
8 Defendant permitted that information to, in fact, move upward to the point were corporate
9 policy was formulated. It became the corporate policy of each Defendant to consciously
10 suppress the dangers of their asbestos and fail to warn of the dangers of asbestos for the
11 purpose of maximizing their own profits. It was the corporate policy of each Defendant to
12 choose profit over consumer and worker safety.

13     71.    The above-referenced conduct of said Premises Owner/Contractor Liability
14 Defendants, their "Alternate Entities," and each of them, was and is willful, malicious,
15 outrageous and/or in conscious disregard and indifference to the rights and safety of users
16 of said asbestos and asbestos containing products, including Plaintiff DENNIS
17 HELLERVIK. Premises Owner/Contractor Liability Defendants, their "Alternate Entities,"
18 and each of them, are guilty of oppression, fraud, or malice and engaged in conduct which
19 was intended by the Defendants to cause injury to the Plaintiff or conduct which was
20 carried on by the Defendants with a willful and conscious disregard of the rights and safety
21 of others. Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and
22 each of them, subjected Plaintiff to cruel and unjust hardship in conscious disregard of
23 their rights and engaged in intentional misrepresentation, deceit, or concealment of a
24 material fact known to the Defendants with the intention on the part of the Defendants of
25 thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff
26 therefore, for the sake of example and by way of punishing Defendants, seek punitive
27 damages, according to proof.

28                                                                     **FOURTH CAUSE OF ACTION**

1                                (Loss of Consortium)

2                             (As Against All Defendants)

3       72.    Plaintiffs are informed and believe hereby incorporate by reference, as

4 though fully set forth herein, each and every allegation contained in each of the paragraphs

5 above.

6       73.    Plaintiffs are informed and believe were married at all times relevant to this

7 action; they were, and are now, husband and wife.

8       74.    Prior to Plaintiff DENNIS HELLERVIK'S injuries as alleged, Plaintiff DENNIS

9 HELLERVIK was able and did perform duties as a spouse. Subsequent to the injuries and

10 as a proximate result thereof, Plaintiff DENNIS HELLERVIK has been unable to perform

11 the necessary duties as a spouse and the work and service usually performed in the care,

12 maintenance and management of the family home, and Plaintiff will be unable to perform

13 such work, service and duties in the future. As a proximate result thereof, Plaintiff's spouse

14 Marciana Pierson has been permanently deprived and will be deprived of the consortium of

15 her spouse, including the performance of duties, all to her damages, in an amount

16 presently unknown to Plaintiffs are informed and believe but which will be proved at the

17 time of trial.

18       75.    Further, as a direct and proximate result of the acts of Defendants, their

19 "Alternate Entities," and each of them, and the severe injuries caused thereby to Plaintiff

20 DENNIS HELLERVIK as set forth in this complaint, Plaintiff's spouse THO HELLERVIK

21 has suffered, and for a long period of time will continue to suffer loss of consortium,

22 including but not by way of limitation, loss of services, marital relations, society, comfort,

23 companionship, love and affection of said spouse, and has suffered severe mental and

24 emotional distress as general nervousness as a result thereof.

25       76.    Discovery of the cause of Plaintiff's spouse THO HELLERVIK's loss of

26 consortium, as herein alleged, first occurred within one year of the date this complaint was

27 filed.

28

-29-      <sub>dms W:\Oarrs\Kellnr\0, Dennis 0, 085, 014/les Docts\3 Pleadings\Complant _KELLERVIK LA.wpd</sub>

1    WHEREFORE, Plaintiffs are informed and believe  pray judgment against
2  Defendants, and each of them, in an amount to be proven at trial in each individual case,
3  as follows:
4        1. General damages, according to proof;
5        2. Damages for medical and related expenses, according to proof;
6        3. Damages for loss of earning capacity, according to proof;
7        4. Damages for loss of earnings, according to proof;
8        5. Damages for Plaintiffs are informed and believe ' other economic losses,
9  according to proof;
10        6. Exemplary or punitive damages, according to proof;
11        7. Plaintiff's spouse's damages for loss of consortium, according to proof;
12        8. Prejudgment interest, according to proof;
13        9. Costs of suit incurred herein; and
14        10. Such other and further relief as this Court may deem just and proper, including
15  costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and related
16  provisions of law.
17
18
19
20  DATED: December 9, 2011          DEBLASE BROWN EYERLY LLP
21
22                                   By: _____
23                                        Eric Brown
                                          Attorneys for Plaintiff
24
25
26
27
28

-30-

1        WHEREFORE, Plaitniffs are informed and believe pray judgment against

2 Defendants, and each of them, in an amount to be proven at trial in each individual case,

3 as follows:

4       1. General damages, according to proof;

5       2. Damages for medical and related expenses, according to proof;

6       3. Damages for loss of earning capacity, according to proof;

7       4. Damages for loss of earnings, according to proof;

8       5. Damages for Plaitniffs are informed and believe ' other economic losses,

9 according to proof;

10       6. Exemplary or punitive damages, according to proof;

11       7. Plaintiff's spouse's damages for loss of consortium, according to proof;

12       8. Prejudgment interest, according to proof;

13       9. Costs of suit incurred herein; and

14       10. Such other and further relief as this Court may deem just and proper, including

15 costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and related

16 provisions of law.

17

18

19

20 DATED: December 9, 2011            DEBLASE BROWN EYERLY LLP

21

22                         By:

23                            Eric Brown
                           Attorneys for Plaintiff

24

25

26

27

28

-30-

# EXHIBIT B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TUCKER ELLIS & WEST LLP
ANNE SWOBODA CRUZ – SBN 229819
515 South Flower Street, 42nd Floor
Los Angeles, California 90071
Telephone:  (213) 430-3400
Facsimile:  (213) 430-3409
anne.cruz@tuckerellis.com

Attorneys for Defendant
ROCKWELL AUTOMATION, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DENNIS HELLERVIK AND THO
HELLERVIK,

Plaintiffs,

v.

3M COMPANY et al.,

Defendants.

Case No.

**DECLARATION OF THOMAS F.
MCCAFFERY IN SUPPORT OF
DEFENDANT ROCKWELL
AUTOMATION, INC.'S NOTICE OF
REMOVAL**

Complaint filed:  December 9, 2011

I, Thomas F. McCaffery, declare and state as follows:

1.      I am over the age of 18 years of age and am competent to testify to the facts set forth in this declaration.  I have personal knowledge of the facts contained in this declaration.

2.      My business address is 107 S. West Street, Suite 709, Alexandria, VA  22314.

3.      My formal education includes a Bachelor of Science degree from the U.S. Merchant Marine Academy in Marine Transportation & Management and a Masters of Business Administration from Georgetown University.

4.      I am a Commander in the United States Navy, a member of the Society of Naval Architects and the Marine Engineers, and the Advisory Committee, American Merchant Marine History Project.  In addition, I am a maritime technical consultant and researcher.

1
DECLARATION OF THOMAS MCCAFFERY IN
SUPPORT OF DEFENDANT ROCKWELL
AUTOMATION, INC.'S NOTICE OF REMOVAL

I almanage/010802/004471/757383/1

5. Through my education, training and work experience, I have developed expertise regarding historical United States Navy ship design, development, maintenance, construction and repair, including the mandatory nature of compliance with military specifications and the level of control and supervision exercised by the United States Navy over the design, manufacture and installation of equipment and machinery aboard a United States Navy vessel.

6. I am informed that the plaintiff in this case, Dennis Hellevik, is alleged to have worked on or around asbestos-containing electrical control products manufactured and supplied by Rockwell Automation Inc. on board U.S. Navy vessels between 1954 and 1958.

7. Any and all electrical components, including controllers and switches, installed on board naval ships would have been required to meet either Navy Department specifications or Military Specifications (MilSpecs). Navy Department and Military specifications for shipboard electrical and other products are precise and include a strict design approval and inspection process controlled by the U.S. Navy.

8. For example, electrical equipment, including controllers and switches, manufactured for use on United States Navy vessels must strictly comply with reasonably precise specifications and the military approval process. Those specifications applicable to electrical products such as including arc shields, switchgear, and motors for use onboard United States Naval vessels include, but are not limited to, MIL-M-1940, MIL-M-17059, MIL-M-17060, MIL-M-17413, MIL-M-17556, and MIL-G-18474. The specifications applicable to circuit breakers, contactors, relays, motor controllers, panels and circuit breakers, rheostats, switches and similar electrical components include, but are not limited to, MIL-C-1938, MIL-C-1939, MIL-R-2033, MIL-C-2174, MIL-C-2212, MIL-R-15109 and MIL-C-17361. Finally, the overall design of electrical systems for naval shipboard use was controlled by a separate specification MIL-E-917.

9. Numerous Military, Federal and Commercial Specifications, Standards and Drawings are incorporated by specific reference into each specification, forming a part of the specification set applicable to any particular piece of equipment.

DECLARATION OF THOMAS MCCAFFERY IN
SUPPORT OF DEFENDANT ROCKWELL
AUTOMATION, INC.'S NOTICE OF REMOVAL

SFOiManage/011374/000235/186127/1

10.     Before a manufacturer received authorization to manufacture or supply machinery such as motors and switches for/to the U.S. Navy, all of the drawings, plans, technical manuals and other design documentation first had to be inspected and approved by the U.S. Navy. These inspections and approvals were the responsibility of the Bureau of Engineering and its successor organizations, the Bureau of Ships, Naval Ship Systems Command and Naval Sea Systems Command (hereinafter, "Navy"). The Navy frequently required changes in design, materials and documentation before approving the design and authorizing the manufacture of the machinery.

11.     United States Naval Machinery Inspectors were stationed on site at manufacturing facilities to inspect and test this equipment during each phase of the manufacturing process. At any point, if any material, feature or component of the equipment failed to comply with the applicable specifications, standards or the approved design, then it would have been rejected. In short, if an electrical component such as an including arc shield, switchgear, or motor supplied to the Navy was installed aboard a U.S. Naval vessel, then it conformed to the detailed plans that were approved the Navy and necessarily complied with all of the precise military specifications and standards, including the specification of the precise material composition of component parts, including any that may have contained asbestos.

12.     The Navy required the use of many different components and materials that comprised the electrical components, including controllers and switches that qualified for use on Navy vessels. Each sub-component was designed and manufactured in accordance with similarly precise specifications, standards and, design reviews which also specifically required the precise type of material to be used in these components. Where the specifications or standards permitted the manufacturer to choose between two or more types of materials (such as plastic materials or electrical insulation materials), the contractor's choice was subject to specific Navy review and approval. To the extent that any piece of equipment supplied to the U.S. Navy for installation on a combat ship contained asbestos, it would have been specifically required or approved by the Navy through the specification and design approval process.

DECLARATION OF THOMAS MCCAFFERY IN
SUPPORT OF DEFENDANT ROCKWELL
AUTOMATION, INC.'S NOTICE OF REMOVAL

SEOiManage/011374/000235/186127/1

13.   If a component on a piece of naval equipment, such as a controller or switch, was actually installed onboard a U. S. Naval vessel, then that component and the material composition of that component complied with the precise specifications, standards and design requirements that the Navy required for such a component. If such a component contained asbestos, then the Navy required and approved the inclusion of asbestos in that component in one form or another.

14.   Therefore, every facet of the design and manufacture of any piece of equipment supplied manufactured or supplied to the U.S. Navy for use on a Navy vessel by Rockwell was controlled by the U.S. Navy.

15.   The U.S. Government, through the Navy, was and still is, one of the world's largest heavy industrial concerns. Every day for over 100 years thermal insulation materials have been removed, fabricated and installed by the U.S. Navy's shipyards, ship repair facilities and shipbuilding contractors. Industrial hygiene in the Navy's industrial facilities was initially the responsibility of Navy Medical Corps physicians. However, in the early 1940s, the U.S. Navy's Bureau of Medicine and Surgery initiated its own industrial hygiene program to provide greater protection for its uniformed and civilian workforce. As a result, the Bureau of Medicine and Surgery, as well as other Navy organizations, including the Bureau of Ships and its successors, developed and acquired state of the art knowledge concerning the potential risks or hazards relating to work with or around asbestos containing materials and products. It is inconceivable that a company manufacturing electrical control products such as Rockwell would have had the same level of sophisticated knowledge as the Navy concerning potential asbestos hazards. In fact, the U.S. Navy possessed information and knowledge superior to, if not greatly superior to, that of the companies manufacturing component parts for warships on issues of the industrial hygiene aspects of asbestos and asbestos medicine, including any potential risks involved with use of asbestos containing components or materials in association with electrical control products or other Navy equipment.

DECLARATION OF THOMAS MCCAFFERY IN
SUPPORT OF DEFENDANT ROCKWELL
AUTOMATION, INC.'S NOTICE OF REMOVAL

SFOiManage/011374/000235/186127/1

1        I declare under the penalty of perjury under the laws of the United States, the laws of the

2    State of California and the laws of the State of Virginia that the foregoing is true and correct.

3    Executed on January 10, 2012

4

5    _____

6                    Thomas F. McCaffery

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF THOMAS MCCAFFERY IN
SUPPORT OF DEFENDANT ROCKWELL
AUTOMATION, INC.'S NOTICE OF REMOVAL

SFOiManage/011374/000235/186127/1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John Kronstadt and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV12- 402 JAK (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>DENNIS HELLERVICK and THOS HELLERVICK | DEFENDANTS<br>ROCKWELL AUTOMATION, INC. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Michael C. Eyerly, Esq.<br>DEBLASE BROWN EYERLY LLP<br>10990 Wilshire Boulevard, Suite 1060<br>Los Angeles, California 90024<br>Tel: (310) 575-9955 | Attorneys (If Known)<br>Anne Swoboda Cruz, Esq.<br>Tucker Ellis & West LLP<br>515 South Flower Street, 42nd Floor<br>Los Angeles, California 90071<br>Tel: (213) 430-3400 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C., § 1442(a)(1)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☒ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 446 American with Disabilities – Other | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | **IMMIGRATION** | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Action | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV12- 00402

**FOR OFFICE USE ONLY:** Case Number:

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☒ Yes

If yes, list case number(s): 07-CV-02241-R (JTLx); 11-CV-0226R; United States District Court for the Eastern District of Pennsylvania, where all Federal Court asbestos personal injury actions were centralized.

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Upon information and belief, Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Upon information and belief, Los Angeles | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): Anne Swoboda Cruz, Esq.     Date January 17, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

American LegalNet, Inc.
www.FormsWorkflow.com